# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

LISA BRAINARD,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )      Case No. 12-4017-RDR
                                  )
CITY OF TOPEKA                    )
                                  )
                Defendant.        )

## MEMORANDUM AND ORDER

Plaintiff brings this action against the City of Topeka, alleging that she was discriminated against because of her age and sex and retaliated against because she made claims of protected activity when she was terminated from her employment with the City. She asserts claims under the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964 (Title VII). This matter is presently before the court upon defendant's motion for summary judgment. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

I.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a genuine

issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.  See Anderson, 477 U.S. at 256.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial.  Id.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  See id. The court must consider the record in the light most favorable to the nonmoving party.  See Bee v. Greaves, 744 F.2d 1387, 1396 (10th Cir. 1984), cert. denied, 469 U.S. 1214 (1985).  The court notes that summary judgment is not a "disfavored procedural shortcut;" rather,

it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

## II.

Many of the facts in this case are not disputed. The following facts are either not controverted or are viewed in the light most favorable to the plaintiff. The court will address other facts as we consider the issues raised by the parties.

Plaintiff is a female over the age of forty. She began her employment with the City of Topeka in May 1981. She was terminated from her position on February 11, 2010. She held the position of Technical Administrative Manager in the Information Technology (IT) Department at the time of her termination.

Mark Biswell was employed in the IT Department as deputy director in 2001. He was appointed interim director in 2007, and was named Director of IT in February 2008.

In March 2008, Biswell proposed a plan for restructuring the IT Department. The restructuring affected plaintiff's position, changing it from supervision to administration. Plaintiff's pay did not change when her job duties changed.

In 2008, plaintiff and a male employee, Bill Stephens, were managers in the IT department. Plaintiff had the same job classification as Stephens. Stephens' job duties, however, were very

different from plaintiff's.  Plaintiff referred to Stephens as her "equal counterpart."  Stephens retired in September 2009.  Stephens' position was not filled after he left.

On August 18, 2009, the Topeka City Council Budget Committee voted to remove $100,000.00 from the IT Department's budget.  Prior to the vote, Biswell told the Budget Committee that a cut of this amount would force him to layoff an employee in the IT Department. On August 21, 2009, Biswell met with the City's Human Resources (HR) Director and the City Manager to discuss the loss of funding and what options were available.  Biswell was instructed to prepare a letter to his staff explaining the budget problems and that there would be a layoff in the IT Department.  That letter was shared with the IT staff on August 28, 2009, and it explained what procedures would be followed to determine what position would be eliminated.

In 2010, the City of Topeka instituted a reduction in force (RIF).  Prior to the RIF, on January 13, 2010, Biswell met with City officials to discuss the process for the City-wide RIF that included the IT Department.

Plaintiff was terminated on February 11, 2010.  Plaintiff's position was eliminated.  No managers were hired or retained in the IT Department after the elimination of plaintiff's position and her termination.  Four other positions were also eliminated:  Computer Operator, User System Consultant, Electronics Communications

Manager and Application Systems Administrative Manager. All of these positions were vacant at the time. All three IT manager positions were eliminated.

Plaintiff's major job duties as Technical Administrative Manager were payroll and invoicing. No other position in IT did her job duties. Payroll became centralized in late 2009 to 2010. The job duties being performed by plaintiff were moved to other departments and done by several existing employees: Linda Hardesty in Contracts and Procurement (purchase card reconciliation); Linda Hardesty or Terri Fincham in Contracts and Procurement (purchase requisition entry); Becky Burks in Payroll (payroll functions); Kim Johnson or Cheryl Atherly in Finance (invoice/PO matching). The other duty or duties she performed are now done by Biswell.

In carrying out the RIF, the City eliminated vacant positions first, then filled positions. Management employees were not allowed to "bump" other employees. Seniority was not a consideration for management-level employees in determining which positions were eliminated. Two criteria were used to identify which positions would be eliminated: minimizing the impact of services to the citizens and job function/reorganization.

Prior to plaintiff's termination, Biswell learned of a vacant court administrator position and inquired whether that was a position for which plaintiff could be considered.

During her employment, plaintiff brought several issues of concern to the attention of HR Director Jacque Russell. She expressed concern to Russell regarding: (1) her job change in 2008; (2) the fact that her job evaluation was left on the printer overnight; (3) Biswell noisily and angrily opening a box in the IT office; and (4) her being unable to locate Biswell.

Plaintiff filed a charge of discrimination with the EEOC. She alleged discrimination on the basis of age and gender, and retaliation. In response to the form request for "date discrimination took place" she responded: "2-11-2010."

III.

Plaintiff alleges that she was terminated because of her age and sex in violation of the ADEA and Title VII. Because plaintiff has presented no direct evidence of discrimination and relies solely on circumstantial evidence to prove discrimination, the court turns to the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Simmons v. Sykes Enters., Inc., 647 F.3d 943, 947 (10th Cir. 2011). "Under this framework, the plaintiff must initially establish a prima facie case of discrimination." Id. In the context of a RIF, plaintiff proves a prima facie case by showing that she (1) is within a protected group; (2) was doing satisfactory work; (3) was discharged despite the adequacy of her work; and (4) has some evidence the employer intended

to discriminate against her in reaching its RIF decision.  <u>Hinds v.</u>
<u>Sprint/United Mgmt. Co.</u>, 523 F.3d 1187, 1195 (10th Cir. 2008).  "If
the plaintiff establishes a prima facie case, the burden shifts to
the employer to articulate some legitimate, nondiscriminatory reason
for its action." <u>Simmons</u>, 647 F.3d at 947.  "Should the defendant
carry this burden, the plaintiff must then have an opportunity to
prove by a preponderance of the evidence that the legitimate reasons
offered by the defendant were not its true reasons, but were a pretext
for discrimination." <u>Id</u>.

Here, there is no question that plaintiff falls within two
protected classes: female and over the age of forty.  There is also
no dispute that she was performing satisfactory work and that she
was terminated.

The final requirement of the prima facie case is not easily
decided.  The court recognizes that "the burden placed on a plaintiff
at the prima facie stage is 'not onerous.'"  <u>EEOC v. Horizon/CMS</u>
<u>Healthcare Corp.</u>, 220 F.3d 1184, 1197 (10th Cir. 2000)(quoting <u>Tex.</u>
<u>Dept. of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)).  The
Tenth Circuit has explained how a plaintiff may show discriminatory
intent: "Evidence that an employer fired qualified older employees
[or, in this case qualified female employees] but retained younger
ones [or males] in similar positions is sufficient to create a
rebuttable presumption of discriminatory intent. . . ." <u>Branson v.</u>

<u>Price River Coal Co.</u>, 853 F.2d 768, 771 (10th Cir. 1988).

Plaintiff suggests she has demonstrated a prima facie case of age and sex discrimination because she was not afforded the same opportunities as other male or younger employees. She points to the following matters: (1) Bill Stephens, a male employee who plaintiff describes as similarly situated, retired in the fall of 2009 but was offered continued employment with the City as an independent contractor after Biswell learned that he would have to cut $100,000 from the IT budget; (2) during the general time frame that she was discharged, the City hired two employees, Marisol Romo and Kim Pryer, for positions that she was qualified for; and (3) there were "numerous employees" retained by the City in the IT Department who do not belong to either of plaintiff's protected categories.

A. Bill Stephens

Plaintiff suggests that she was treated differently than Stephens because he was offered continued employment following his retirement. She notes that Stephens gained this employment even though Biswell knew that he would have to cut $100,000 from his IT budget. Plaintiff argues that this is evidence of an inference of gender discrimination.

The facts before the court fail to show that Stephens was similarly situated with plaintiff. Stephens and the plaintiff were both IT managers. However, as part of his position, Stephens had

been a trainer for the IT Department.  When Biswell sent the memo
to his staff on August 27, 2009, he outlined what was going to happen
to Stephens' duties upon his retirement.  Biswell noted on the list
that he was going to "out source" the training that Stephens did.  A
portion of the IT's budget was for contracting.  Following his
retirement, Stephens expressed an interest to Biswell about being
hired as an independent contractor for training purposes.  Biswell
agreed and Stephens was hired as a trainer. Stephens also took care
of the community center public computer labs.  He had performed both
of these tasks prior to his retirement.

    These facts do not demonstrate that plaintiff and Stephens were
similarly situated.  There is no evidence that plaintiff could
perform any of the tasks that Stephens did as an independent
contractor.  Stephens performed entirely different work from that
done by the plaintiff during her employment in the IT Department.
Moreover, there is no evidence that Stephens was hired as an
independent contractor because he was male.  The evidence shows that
the IT budget contemplated the hiring of an independent contractor
when Stephens' retirement was considered.  Biswell agreed to hire
Stephens following his retirement because he was experienced and
could easily handle the tasks that needed to be carried out.
Finally, plaintiff has not shown that there was any position she could
have undertaken as an independent contractor with the City.  She has

also not demonstrated that she ever sought such employment. The court finds that plaintiff has been unable to show that the hiring of Stephens as an independent contractor suggests an inference of gender discrimination.

B.  Hiring of Marisol Romo and Kim Pryer

Plaintiff points out that two individuals who were younger than she was were hired in the IT Department during the "general time frame" that she was discharged. Plaintiff notes that she was not offered either position. She contends that this demonstrates an inference of age discrimination.

The evidence before the court shows that Pryer, who is approximately one year younger than plaintiff, worked for the City as a temporary employee (she was employed by a temp agency) approximately a year before the RIF began. She worked in various departments, including Finance, Fire and IT. She was not, however, hired by the City until a year after plaintiff's discharge. Thus, she did not occupy a position that could be filled by plaintiff at the time of plaintiff's termination. The hiring of Pryer does not demonstrate any inference of age discrimination.

Romo, who is eleven years younger than plaintiff, had been a full-time employee of City4 since 2006. City4 is the government access cable television channel for the City of Topeka. Biswell did not supervise or make employment decisions or recommendations for

City4 employees even though they were under IT's budget. Romo left City employment in November 2009. Her position was not eliminated. Her job duties were performed by a public information officer in another department on a temporary basis until Romo returned in March 2010.

In an affidavit, plaintiff states that she was qualified for the position filed by Romo. She, however, fails to provide any support for that conclusory statement and the record before the court fails to provide any support for it. Romo's position, "Publication/Script Writer, Special Projects Coordinator," required a degree in communications, journalism, film or a closely related field and two years of experience in advertising, public relations, broadcasting, journalism or a related field; experience in writing copy, public speaking, public presentations, reporting and editing; experience in running television production equipment and producing television and radio ads. Plaintiff does not have any college credit and has only a vocational certificate from 1980 in data entry. Her work experience since 1981 has been information technology with the City. Accordingly, the fact plaintiff was not "offered" this position raises no inference of age discrimination.

C. Retention of Numerous Employees in the IT Department

Plaintiff asserts that "numerous employees" were retained in the IT Department who "[did] not belong to either of [her] protected

categories" when she was terminated. She points specifically to Lacey Bisnet, who is under the age of forty; Kyle Brown, who is male and under the age of forty; and Aaron Charest, who is male and under the age of forty. She argues that the retention of these employees demonstrates an inference of age and sex discrimination.

Once again, an examination of the facts concerning these employees reveals the mistake of plaintiff's analysis. Lacey Bisnett and Kyle Brown were not hired until sometime after plaintiff's termination. Thus, they were not retained by the City at the time of her discharge and cannot be considered as support for plaintiff's theory of discrimination.

Charest is a male who was under 40 at the time of plaintiff's discharge and was retained as an employee of the IT Department. However, he was not similarly situated with plaintiff. As previously pointed out, no managers were hired or retained in the IT Department after plaintiff's position was eliminated and she was terminated. Charest was a "system developer." There were several employees, both male and under forty, who were retained in the IT Department at the time of plaintiff's discharge. These employees, however, were computer programmers, developers and engineers. They were not similarly situated to plaintiff because plaintiff's responsibilities as an IT manager were payroll, contracts and other administrative duties. Since the employees noted by the plaintiff

12

were not similarly situated to her, their retention cannot be considered as age or gender discrimination.

In sum, the court finds no inference of age or sex discrimination in the termination of plaintiff from her position as an IT Department manager as a result of a RIF by the City of Topeka. The uncontroverted facts before the court fail to show a prima facie case of age or sex discrimination.

IV.

Plaintiff also contends she was retaliated against under the Title VII and the ADEA because she engaged in protected activity and was then terminated. She asserts that she was discharged because she made complaints about Biswell to the IT Human Resources Director. She argues she has made out a prima facie case of retaliation and she is able to establish that defendant's proffered reason is merely a pretext for retaliation.

In its motion, the defendant contends that plaintiff cannot establish a prima facie claim of discrimination because she has not shown she engaged in protected activity. The defendant further argues plaintiff has not demonstrated that its purported justification for her termination was pretextual.

Retaliation claims under ADEA and Title VII require but-for causation. Univ. of Tex. Sw. Med. Ctr. V. Nassar, 133 S.Ct. 2517, 2534 (2013) (Title VII); Gross v. FBL Financial Services, Inc., 577

U.S. 167, 176 (2009)(ADEA).   Thus, plaintiff must establish that her

protected activity was a but-for cause of the alleged adverse action

by the defendant, not simply that the protected activity was a

"motivating" factor in the adverse employment decision.   To establish

a prima facie case of ADEA or Title VII retaliation, plaintiff must

show that (1) she "engaged in protected opposition to discrimination;

(2) a reasonable employee would have considered the challenged

employment action materially adverse; and (3) a causal connection

existed between the protected activity and the materially adverse

action."   Hinds, 523 F.3d at 1202.

      The court must first consider whether plaintiff engaged in

protected activity.   The Tenth Circuit explained the meaning of

"protected activity" as follows:

>       Although "protected activity" can include voicing
> informal complaints to supervisors, see Hertz v. Luzenac
> Am., Inc., 370 F.3d 1014, 1015 (10th Cir.2004), "to qualify
> as protected opposition, the employee must convey to the
> employer his or her concern that the employer has engaged
> in [an unlawful] practice." Hinds, 523 F.3d at 1203. "A
> vague reference to discrimination and harassment without
> any indication that this misconduct was motivated by age
> does not constitute protected activity and will not
> support a retaliation claim." Id. at n. 13 (brackets and
> internal quotation  marks omitted). An employer cannot
> engage in unlawful retaliation if it does not know that
> the employee at least in part is engaging in protected
> activity. See Petersen v. Utah Dept. of Corr., 301 F.3d
> 1182, 1188 (10th Cir.2002).

Rangel v. sanofi-aventis U.S., LLC, 507 Fed.Appx. 786, 788-89 (10th

Cir. 2013).

The evidence before the court shows that plaintiff did contact the HR Department on several occasions to complain about Biswell. She has indicated that she complained to Joyce Mitchell, who was the acting HR Director in 2007, in three meetings.  In the first meeting, plaintiff expressed dissatisfaction that Biswell was reading her e-mails. In the second meeting, she asserted that she raised concerns about different treatment by Biswell towards her.  She was unable to remember what she complained about in the third meeting. Plaintiff also contends that she raised several concerns with HR Director Russell.  These complaints involved the following: (1) her job change in 2008; (2) plaintiff's evaluation was left in the printer in May 2009; (3) Biswell acted "strange" when he angrily and nosily opened a box in the IT offices outside plaintiff's office in the summer of 2009; and (4) she was unable to locate Biswell.

The aforementioned discussion suggests that it is not clear that the various complaints raised by the plaintiff to the HR Directors were protected activity.  The term "protected activity" refers to action taken to protest or oppose statutorily prohibited discrimination.  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA [or Title VII]." <u>Hinds</u>, 523 F.3d at 1203.  There is no evidence in the record to suggest that any of these complaints

were made by plaintiff based upon age discrimination. Without any reference to age discrimination, the court finds that plaintiff has failed to demonstrate a prima facie case of discrimination under the ADEA because she has failed to show that she engaged in any protected activity.

The issue concerning whether she engaged in any protected activity for purposes of sex discrimination is a closer issue. The evidence shows that plaintiff did raise several concerns of "unfair" treatment. This alone would not be sufficient to demonstrate that she engaged in protected activity. However, HR Director Russell did indicate that plaintiff complained to her that Biswell "talked to her in a way that made her feel stupid because she was a female." This statement was apparently made to Russell around the time of the "box incident," which was in the summer of 2009. The "box incident" involved an event where Biswell opened a box in the IT office area outside of plaintiff's office but had some trouble doing so. Plaintiff thought Biswell was acting strange and left for the day. Russell stated in her deposition that she believed that she communicated plaintiff's complaint about this incident to Biswell.

Although the court has some concern that any of plaintiff's complaints constitute protected activity, the court shall not rest on the ground. The court shall turn to the remaining aspects of the McDonnell Douglas framework.

V.

Even if the court found that plaintiff had presented a prima facie case of sex or age discrimination or retaliation based upon Title VII or the ADEA, we are not convinced that she could avoid summary judgment on these claims. Defendant has presented a legitimate, non-discriminatory reason for plaintiff's termination, i.e., that plaintiff was laid off as part of a RIF. The burden shifts to plaintiff to establish that defendant's explanation is pretextual. The court cannot find that plaintiff has presented sufficient evidence of pretext.

Plaintiff points to the following matters as support for her argument that the defendant's proffered reason was a pretext for discrimination or retaliation: (1) the City did not have any standard RIF methodology; (2) no procedure was established for determining who should be in the RIF and "the decision was left to the head of the department, then rubber-stamped by the City Manager;" and (3) the City was able to find funds to hire other employees even though she was discharged for budgetary reasons.

In the RIF context, proof of pretext may include (but is not limited to) evidence that the plaintiff's termination was inconsistent with the RIF criteria articulated by her employer; a claimed business judgment "so idiosyncratic or questionable that a factfinder could reasonably find that it is pretext for illegal

discrimination"; the employer's inconsistent application of the RIF criteria; or other procedural irregularities in the RIF process. Sanders v. Southwestern Bell Tele., L.P., 544 F.3d 1101, 1106-07 (10th Cir. 2008). In determining whether the plaintiff has sufficiently demonstrated pretext, "we consider the evidence as a whole." Id. at 1107. "However the plaintiff may choose to demonstrate pretext, we have definitively rejected a 'pretext plus' standard; in order to survive summary judgment, a plaintiff generally need not provide affirmative evidence of discrimination beyond the prima facie case and evidence that the employer's proffered explanation is pretextual." Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1168 (10th Cir. 2007). "No additional evidence is necessary to show discrimination because proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination." Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1280 (10th Cir. 2010)(quotation and brackets omitted).

The court is not persuaded that the evidence, even when considered in the light most favorable to the plaintiff, supports the arguments made by the plaintiff. The evidence clearly shows that Biswell informed employees in August 2009 that budget reductions would require the elimination of one IT position effective October 30, 2009. The actual termination did not occur until February 11,

2010, but there appears to be no dispute that such an elimination was forthcoming. Moreover, the evidence shows that the criteria used to determine who would be terminated was based upon an evaluation of the function of the position, the ability to spread those duties to other positions, and the desire not to impact the services of the citizens of Topeka.

Plaintiff has failed to demonstrate that the City did not follow the criteria that it established concerning this RIF. The evidence does not demonstrate that the City lacked objective criteria or that it failed to follow the criteria that it established. Plaintiff has failed to point to any evidence that the process used to determine the elimination of her position and her termination was any different from the processes used by the City to eliminate other positions for the RIF. An employer may choose the criteria it wishes to employ to conduct a RIF and "we will not disturb that exercise of [a] defendant's business judgment." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1169 (10th Cir. 1998); see also Furr v. Seagate Tech., Inc., 82 F.3d 980, 986 (10th Cir. 1996)("[T]he manner in which a company chooses to conduct a RIF is within the company's sound business discretion...."). While plaintiff appears to believe that her tenure and past performance should have been considered, she "cannot defeat summary judgment by claiming that she would have been retained if different RIF criteria had been used." Beaird, 145 F.3d at 1169.

The court also fails to find any support for the contention that the determination of who made the decision of the position to be eliminated in the IT Department was a pretext for discrimination or retaliation. Plaintiff is clearly dissatisfied with the end result, but the evidence does not show that plaintiff's termination was inconsistent with the RIF criteria established by the employer. In addition, the decision made by Biswell and approved by the City Manager is not "so idiosyncratic or questionable that a factfinder could reasonably find that it is pretext for illegal discrimination."

The court has already addressed plaintiff's contention that other employees were hired even though she was terminated for budgetary reasons. The court shall briefly recap what has previously been said. Plaintiff contends that the defendant's contention that she was terminated for budgetary reasons "begs credibility, given the fact that [Biswell] simultaneously offered contract employment and full-time employment to three other individuals who were not making complaints regarding discriminatory or retaliatory treatment." As previously explained, the relevant facts concerning these other positions in no way establishes a pretext for discrimination or retaliation. None of these other employees were similarly situated to the plaintiff. No managers were hired or retained in the IT Department after the elimination of plaintiff's position and termination.

In sum, the court finds that plaintiff has not established that the City's proffered reason for terminating her was a pretext for discrimination or retaliation.  Thus, the defendant is entitled to summary judgment on all of plaintiff's claims.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. # 40) be hereby granted.  Judgment shall be entered for the defendant and against the plaintiff on all claims.

**IT IS SO ORDERED.**

Dated this 14th day of February, 2014, at Topeka, Kansas.


 s/ Richard D. Rogers
Richard D. Rogers
United States District Judge